UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCOS ANTHONY CUEVAS,

    Petitioner,

    v.

MONTGOMERY, Warden,

    Respondent.

                                           /

No. C 13-5790 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on the claims set forth in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Although given an opportunity to do so, petitioner did not file a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2011, a jury in Santa Clara County convicted petitioner of first-degree murder. The jury found to be true a special circumstance that the murder was committed to further the activities of a criminal street gang while petitioner was a member of the gang. Petitioner was sentenced to life in prison without the possibility of parole. The California Court of Appeal affirmed his conviction on appeal (Exh. 8), and petition for review to the California Supreme Court was denied on June 12, 2013 (Exh. 10).

The claims raised in the instant petition do not require a detailed recitation of the facts surrounding the crimes. The following summary is derived from the opinion of the California Court of Appeal. *See People v. Cuevas*, 2013 WL 1224659, 2-7 (Cal. Ct. App. Mar. 27, 2013).

On October 29, 2007, just after 10:00 p.m., David Holguin was shot and killed on a street corner in San Jose, California, while walking with his friend Aaron Cedillo. The shooter, whom Cedillo later recognized as petitioner, was in the front passenger seat of a car that had pulled up next to them. Approximately half an hour later, a car matching the same description crashed into the center divider on a nearby section of Highway 101. Petitioner's phone records showed that he had made or received calls near the crash site a few minutes after the crash occurred. His fingerprint was also recovered from a car stereo found in the trunk of the crashed car.

In November 2007, investigating officers received a tip from Marcos Navarro, a member of Varrio Peligrosos Locos ("VPL"), a Sureño criminal street gang. Navarro informed the officers that petitioner, a fellow VPL member, had admitted to Navarro while they were both in jail that he murdered Holguin.

At trial, the prosecution's theory of the case was that petitioner committed the murder, believing Holguin to be a member of a rival gang, in retaliation for an earlier killing of a fellow VPL gang member. Holguin was wearing a red sweater, the color commonly associated with Norteños, VPL's rival street gang, and the killing occurred in a Norteño-controlled area. To support its case, the prosecution called a criminal street gang expert, Detective Prescott, to testify extensively on gang history, gang structure, and the violent relationship between Norteño and Sureño street gangs. Detective Prescott also discussed the significance of gang loyalty and the consequences of antagonizing a rival gang.

**ANALYSIS**

A.  **STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, which in this case is that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

//
//
//

3

**B.     ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts two claims: (1) the trial court abused its discretion by admitting cumulative and prejudicial expert testimony in violation of petitioner's right to due process; and (2) by refusing to dismiss the entire jury panel that had been tainted by the comments of a prospective juror, the trial court violated petitioner's right to a fair and impartial jury.

### 1.     Cumulative Evidence

Petitioner claims that the trial court abused its discretion under California Evidence Code 352 in allowing cumulative, prejudicial expert testimony on gangs.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). No specific constitutional guarantee is cited here, and the due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Because of a lack of clearly established Supreme Court precedent providing that due process prohibits the admission of overly prejudicial evidence, under AEDPA federal habeas relief is not available on petitioner's claim. *See ibid.* (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)). While this is sufficient grounds to deny petitioner's claim, it is also clear that the claim fails on its merits.

Petitioner claims that the gang testimony was so cumulative as to be prejudicial, rendering

his trial fundamentally unfair (Pet. Att. A at 1). In determining that the expert testimony was properly admitted, the California Court of Appeal looked to *People v. Gonzalez*, 126 Cal. App. 4th 1539, 1550 (2005), which held:

> The admission of gang evidence over an Evidence Code section 352 objection will not be disturbed on appeal unless the trial court's decision exceeds the bounds of reason . . . . Since at least 1980, our courts have recognized that evidence of gang sociology and psychology is beyond common experience and thus a proper subject for expert testimony . . . . The People are entitled to introduce evidence of gang affiliation and activity where such evidence is relevant to an issue of motive or intent . . . . Because a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence. (Citations omitted.)

California law incorporates the federal standard in requiring petitioner to show that the admission of cumulative gang evidence was so prejudicial that it rendered his trial so arbitrary and fundamentally unfair that it violated federal due process. *People v. Partida*, 37 Cal. 4th 428, 436, 439 (2005).

The gang testimony evidence was generally relevant and admissible to prove a gang enhancement allegation and a gang special circumstances allegation, and specifically relevant to establish the motive for an otherwise random act of violence. In proving the special allegation that the murder was committed for the benefit of, or in furtherance of a criminal street gang, the prosecution was required to show that the gang has as one of its primary activities the commission of one or more of the crimes enumerated in California Penal Code and that the gang has engaged in a pattern of criminal gang activity by committing two or more such predicate offenses. Thus, the expert testimony on predicate crimes committed by VPL members was properly admitted. The testimony also established the rivalry and animosity between the two gangs. An explanation of the culture of violence underscored the ramifications of the prior murder and the need for retaliation. The expert testimony also explained the shooter's mistaken identification of Holguin as a rival gang member due to his clothes and the location where he was killed. There were also other pertinent inferences that the jury could have drawn from the expert testimony, such as the reluctance of some witnesses to testify. Petitioner has not shown that the gang testimony was so cumulative of other evidence that its admission rendered the trial fundamentally unfair in spite of the testimony's clear relevance to the issues at trial.

In addition, the trial court properly instructed the jury that it was not permitted to consider

the gang activity evidence to prove petitioner has a bad character or is predisposed to commit a crime. Juries are presumed to follow a court's limiting instruction with respect to the purposes for which evidence is admitted. *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997). The expert testimony adduced at trial was highly probative and properly limited by the trial court. Petitioner has provided no evidence to show that his trial was arbitrary and fundamentally unfair. To the contrary, the jury's inability to reach a verdict on several special circumstance allegations and the charge of felon in possession of a firearm strongly suggests that the jury was not simply prejudiced against petitioner by the gang testimony.

The state courts' rejection of petitioner's claim that the testimony was cumulative and prejudicial was not contrary to, or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on this claim.

**2.   Tainted Jury**

Petitioner claims that comments by a prospective juror during jury selection tainted the eventual jury in violation of petitioner's constitutional rights to due process, confrontation, and a fair and impartial jury. During the second day of jury selection, the court asked prospective Juror 44 ("J.K.") about his past employment. J.K. told the court that he worked for the Education Department, part of which involved teaching at juvenile hall and at the Santa Clara County boys' ranch. The following day, J.K. stated that petitioner's name looked familiar and that he believed petitioner had been one of his former students, although he did not specify the where he might have taught petitioner. The court excused J.K. for cause, but denied petitioner's motion to dismiss the entire venire on the grounds that J.K.'s comments revealed to the eventual jurors that petitioner had a juvenile record. His present claim is based on the same argument: J.K.'s comments tainted the jury by revealing that petitioner had a criminal record.

As an initial matter, petitioner raises the question of whether the type of error — the jury's exposure to improper, extrinsic information, such as the statement by J.K. — is a structural error that requires relief regardless of whether or not there was prejudice. It does not. As discussed above, relief under AEDPA requires "clearly established" federal law in the form of United States Supreme

6

1 Court precedent. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 405–06.  There is no Supreme
2 Court precedent holding that a trial before a jury panel tainted by extrinsic evidence is structural
3 error. *Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005).  To the contrary, a jury's exposure to
4 extrinsic information is a form of trial error that must undergo a harmlessness analysis on federal
5 habeas review.  *See*, *e.g.*, *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000); *Jeffries v.*
6 *Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993).  Petitioner cites to *Mach v. Stewart*, 137 F.3d 630 (9th
7 Cir. 1998), but there the Ninth Circuit stated that it "need not decide" whether the error was
8 structural because it was not harmless, *id.* at 634.  In a federal habeas petition, the standard for
9 whether a trial error is harmless is whether the error had a "substantial and injurious effect or
10 influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

11 Even assuming that the jury's exposure to J.K.'s statements was error, it was harmless under
12 the *Brecht* standard.  First, J.K.'s statements did not directly connect petitioner to a criminal past.
13 J.K. stated that he had taught at a juvenile hall and a boys ranch among other places, and the next
14 day he said that petitioner might have once been his student.  However, J.K. never specified where
15 he might have taught petitioner, or that he taught him at juvenile hall or the boys ranch.  In order to
16 make the connection petitioner suggests, the eventual jurors would have had to recall J.K.'s
17 testimony from the previous day that he had taught at juvenile hall and a boys ranch, and make the
18 assumption that was where J.K. had taught him.  Second, the prospective jurors were already aware
19 that petitioner had a prior criminal record; jurors were read petitioner's charge of being a felon in
20 possession of a firearm, with the allegation that petitioner had previously been convicted of
21 automobile theft.  *Cuevas*, 2013 WL 1224659 at *10 (fn. 27).  Third, the fact that the jury did not
22 convict him on one of the charges suggests that they did not base their verdict on simple animus or
23 prejudice against petitioner rather than on the evidence particular to each charge.  Finally, the sworn
24 jurors were properly instructed to only consider evidence that was the sworn testimony of witnesses,
25 and juries are presumed to follow a court's instructions.  *People v. Avila*, 38 Cal. 4thz 491, 574
26 (2006).  Under these circumstances, J.K.'s remarks did not have a substantial and injurious effect or
27 influence in determining the jury's verdict.

28

7

Petitioner cites two cases that do not alter this conclusion: *Irvin v. Dowd*, 366 U.S. 717 (1960), and *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1998). In *Irvin*, the Supreme Court granted habeas relief to a prisoner who had been tried by an openly and admittedly prejudiced jury. *Irvin*, 366 U.S. at 728. The jury in *Irvin* had been tainted by extensive news coverage of both the defendant's crimes and his subsequent confession, and eight out of the twelve empaneled jurors openly expressed their belief that the defendant was guilty. *Id*. at 719-20, 728. The type of extrinsic evidence and the level of prejudice it caused is not remotely comparable to the vague statement from J.K. in this case. In *Mach*, the petitioner was convicted of sexually assaulting a child, and a prospective juror had said before the eventual jury panel that, in her experience as a social worker, she had never encountered a child who had lied about being sexually assaulted. *Mach*, 137 F.3d at 633. The comment's direct relationship to the central issue at trial, representation of expertise, and unequivocal endorsement of the victim's credibility in *Mach* produced a level of prejudice against the petitioner that J.K.'s comments did not approach. As a result, neither *Irvin* nor *Mach* support granting petitioner habeas relief on his claim.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED**.

DATED: March   16  , 2015

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE